IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **2018 BUGATTI CHIRON (VIN#: VF9SP3V34JM795083)**, <br><br> Defendants *in rem*. | **Civil No. 23-1392 (SCC)** |

**CLAIMANTS' AMENDED MOTION TO DISMISS AND DEMAND FOR JURY TRIAL**

**To the Honorable U.S. Magistrate Judge Marshal D. Morgan:**

Claimants Golden Exotics, LLC and Kevin Thobias (together, "Claimants") move this Court to dismiss the "Verified Complaint for Forfeiture In Rem" ("Complaint") filed by the United States (See ECF No. 1) and in support state as follows:

I. **FACTS**

1. On May 31, 2023, U.S. Magistrate Judge Bruce J. McGiverin, of the United States District Court for the District of Puerto Rico, issued a Warrant to Seize Property Subject to Forfeiture, based solely on a sealed affidavit provided by a government agent (the "Affidavit"). See ECF No. 24-1.

2. On or about June 2, 2023, government authorities with the Department of Homeland Security ("DHS"), under the authority granted by the Warrant, seized a 2018 Bugatti Chiron (VIN#: VF9SP3V34JM795083) (the "Vehicle") belonging to Golden Exotics, LLC, a company in which Claimant Kevin Thobias is the sole member.

3. The Vehicle was seized in Miami, Florida.

1

4. On August 2, 2023 the Government filed under seal an unsworn declaration ("Declaration") submitted in support of the Complaint (ECF No. 3), which purports to establish probable cause to support the Warrant under which the Vehicle was taken.

5. Claimants filed a Motion to Dismiss this action on October 5, 2023. At the time, the Declaration remained sealed.

6. The Declaration was unsealed to Claimants on November 22, 2023.

7. At a hearing before the Court on September 5, 2024, the Court advised Claimants' counsel that the Court would permit Claimant to file an amended Motion to Dismiss, responding to the unsealed Declaration. The instant motion follows.

## II.    STANDING

8. "A claimant who establishes standing to contest forfeiture may move to dismiss the action under [Federal Rule of Civil Procedure] 12(b)." Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions, Rule G(8)(b)(i).

9. Statutory standing is satisfied by simply complying "with the procedures and deadlines for filing a claim set out in Supplemental Rule G." United States v. Ltr. from Alexander Hamilton to Marquis de Lafayette Dated July 21, 1780, 15 F.4th 515, 521 (1st Cir. 2021).

10. Pursuant to Supplemental Rule G(5), Claimants timely filed a claim asserting their interest in the Vehicle. See ECF Nos. 9 & 10.

11. "[A]t the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices." United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 41 (1st Cir. 2003).

12. "[A]n allegation of ownership, coupled with some evidence of ownership, is sufficient to establish constitutional standing to contest a forfeiture." United States v. United States Currency $81000, 189 F.3d 28, 35 (1st Cir. 1999).

13. Claimant Golden Exotics, LLC, a Montana limited liability company, has timely filed a verified claim asserting ownership of the Vehicle. ECF No. 10.

14. Claimant Golden Exotics further demonstrated title of the Vehicle via its Certificate of Title. ECF No. 24-3.

15. Claimant Kevin Thobias timely filed a verified claim stating he is the sole owner of Golden Exotics, LLC. ECF No. 9.

16. Golden Exotics' Articles of Organization demonstrate Claimant Thobias's ownership. ECF No. 24-4.

17. Thus, Claimants have established statutory and constitutional standing.

### III.  LEGAL ARGUMENT

**A. The Complaint Fails to Meet the Heightened Pleading Standard Required by the Supplemental Rules, and to Meet Due Process Requirements.**

18. Pursuant to Rule 12(b)(6), civil forfeiture claimants may move to dismiss an inadequately pleaded forfeiture action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

19. On such a motion, the Court is "obligated to view the facts of the complaint in the light most favorable to the [United States], and to resolve any ambiguities in [its] favor." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011). However, the United States may not "seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable." Medina-Rodriguez v. $3,072,266.59 in United States Currency, 471 F. Supp. 3d 465,

3

474 (D.P.R. 2020), quoting United States v. 1,399,313.74 in United States Currency, 591 F. Supp. 2d 365, 369 (S.D.N.Y. 2008).

20. Supplemental Rule E(2)(a) heightens this pleading standard by providing that a complaint for forfeiture "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions E(2)(a).

21. This pleading standard "is higher than the 'short and plain statement of the claim' criteria set forth in Federal Rule of Civil Procedure 8." Medina-Rodriguez, 471 F. Supp. 3d at 474, citing United States v. 49,000 Currency, 330 F.3d 371, 375 n.8 (4th Cir. 2003) (holding that "within the context of civil forfeiture, the Government must do more than simply provide greater detail than it otherwise would be required to do under [the Federal Rules of Civil Procedure]").

22. Further, pursuant to Supplemental Rule G(2)(f), which modified Supplemental Rule E(2)(a), the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. Admin. or Mar. Cl. & Asset Forfeiture Actions G(2)(f).

23. "Forfeiture statutes are strictly construed against the government," United States v. $191.910.00 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir. 1994), citing United States v. One 1936 Model Ford V-8 Deluxe Coach, 307 U.S. 219 (1939).

24. Thus, when the government brings a forfeiture action against property, the burden of proof is on the government to show by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1).

25. To determine whether a complaint complies with Supplemental Rules G(2)(f) and E(2)(a), courts "look to the totality of the evidence." Medina-Rodriguez, 471 F. Supp. 3d at 474, citing United States v. Funds in the Amount of Thirty-Thousand Six Hundred Seventy Dollars, 403 F.3d 448, 455 (7th Cir. 2005)

26. To sustain forfeiture on a wire fraud cause of action, which appears to be the sole basis of the Government's action here,[1] a complaint must allege: "(1) a scheme to defraud, (2) knowing and willful participation in the scheme with the intent to defraud; and (3) the use of interstate or foreign wire communications to further that scheme." United States v. McLellan, 959 F.3d 442, 469 (1st Cir. 2020) (citation omitted); 18 U.S.C. § 1343.

27. The due process clause also establishes minimum requirements for a successful pleading in a forfeiture action.

28. "[D]ue process, in the forfeiture context, minimally requires that the government provide an individual with 'notice and an opportunity to be heard' before confiscating his property." Gonzalez-Gonzalez v. United States, 257 F.3d 31, 35 (1st Cir. 2001), citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 46 (1993).

29. "The touchstone is reasonableness: the government must afford notice sensibly calculated to inform the interested party of the contemplated forfeiture and to offer him a fair chance to present his claim of entitlement." Id. at 36, citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

30. The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, S.Ct. 893, 902, L.Ed. 2d 18 (1976).

---

[1] See, e.g., Declaration at 2-11.

31.     Here, the Complaint fails to state a claim, and tells the Claimants nothing of substance. See ECF No. 1.

32.     The Complaint contains six paragraphs, the first five of which recite the usual jurisdictional and formal requisites. There is no indication of what crime was allegedly committed or by whom, what evidence the Government has to prove any crime, or the nexus between the Vehicle and the alleged crime. The Complaint falls below the standard set by the Supplemental Rules, applicable precedent, and the reasonable expectations of citizens in a country governed by the rule of law. See ECF No. 1.

33.     Claimant Thobias has yet to be given any information elucidating the supposed link between the Vehicle and any crime.

34.     Further, the Declaration, submitted by the Government to purportedly support its claim, fails to establish any crime allegedly committed, and additionally fails to allege, let alone set out facts in an attempt to show, the nexus between the Vehicle, or the value of the Vehicle, and the alleged crime.

   a. **The Government has Failed to Set Out Facts that Would Show that the Property is Subject to Forfeiture by a Preponderance of the Evidence.**

35.     In the Government's Declaration, ICE-HSI Special Agent Irving Perez states allegations based on (1) a detainment by CBP/HIS of Claimant Thobias and subsequent search of his cell phone on January 6, 2021 at Miami International Airport, and (2) an interview by HSI agents of Claimant Thobias on May 17, 2023.

36.     The Declaration makes vague allegations to Claimant Thobias' actions and/or knowledge but fails to establish any evidence of wrongdoing on Claimant Thobias' part.

37.     The Declaration apparently assumes, without any basis, that use of "blackhat service providers" means commissioning illegal actions.

38.     However, the Declaration does not define the term "blackhat service providers" nor does it establish or allege that "blackhat" activity is illegal activity or that engaging a "blackhat service providers" for any activity is illegal.

39.     The fact that Claimant Thobias communicated with certain allegedly "blackhat service providers" does not mean that he committed any crime.

40.     The Declaration alleges that Claimant Thobias received communications as to what types of services these "blackhat service providers" may offer (see, e.g. Declaration ¶¶ 11-14); for example:

> "LORDAN [a "blackhat service provider"] described the services he and his team could provide to THOBIAS as well as the fees they would charge per service…" Declaration ¶ 11.
>
> "JOHN [a "blackhat service provider"] sends THOBIAS a list that includes several Amazon data retrieval services…" Declaration ¶ 12.
>
> "ERIKO [a "blackhat service provider"] discusses the different hacking services they can provide…" Declaration ¶ 13.
>
> "FNU LNU 1 [a "blackhat service provider"] affirms that they can provide that service and sends a "price list" to THOBIAS…" Declaration ¶ 14.

41.     However, the Declaration does not allege that Claimant Thobias actually engaged these "blackhat service providers" to perform these activities.

42.     In fact, much of the Declaration merely details the services that these "blackhat service providers" purportedly offer, without alleging that Claimant Thobias used such services.

43.     Even where the Declaration does allege that Claimant Thobias engaged these "blackhat service providers" for a specific limited activity, it does not allege that any service that was engaged was illegal.

44.     For example, the Declaration alleges:

> "On several occasions, LORDAN [a "blackhat service provider"] told THOBIAS that he would send THOBIAS the information THOBIAS was purchasing to THOBIAS' email. On several occasions in the conversation THOBIAS provided the email kevin@bettermornings.org to LORDAN. Based on the conversation, agents were able to determine that THOBIAS made several purchases of Amazon information from LORDAN and his team." Declaration ¶ 11.

45. The Declaration does not specify what information Claimant Thobias allegedly purchased from Lordan, nor does the Declaration demonstrate or even allege that this information was purchased or obtained in a criminal manner.

46. Similarly, the Declaration alleges:

> "THOBIAS initially hires JOHN [a "blackhat service provider"] to remove "hijackers" from THOBIAS' Amazon listing who have been making changes to THOBIAS listing and affecting his business. JOHN agrees and uses his skills to remove the hijackers from the listing." Declaration ¶ 12.

47. The Declaration fails to illustrate how this action was performed, fails to demonstrate or even allege that this action was performed in a criminal manner, and fails to even allege that Claimant Thobias was aware of or involved in any criminal activity.

48. As another example, the Declaration describes a conversation between Claimant Thobias and, among others, a person named "Eriko," a "blackhat service provider," where Eriko lists services that he offers. Yet the only interaction alleged between Claimant Thobias and Eriko is that:

> "ERIKO asks THOBIAS to provide an email and THOBIAS provides the email kevin@bettermornings.org, and ERIKO confirms sending an email to THOBIAS with a form that THOBIAS must review." Declaration ¶ 13.

49. Obviously, providing someone with an email address and being asked to review an emailed form is not criminal activity.

50.     The Declaration fails to even allege that Claimant Thobias engaged Eriko to perform any services, let alone any illegal services.

51.     The Declaration simply does not demonstrate that Claimant Thobias engaged in criminal activity at all, let alone that such activity was in relation to the Vehicle.

      **b. The Government has Failed to Demonstrate the Nexus Between the Vehicle and any Alleged Criminal Activity.**

52.     The Declaration alleges that Claimant Thobias is the owner of Nutragoup Holdings LLC a/k/a Nutragroup, under which he operated an e-commerce business. Declaration ¶¶ 5-6.

53.     The Declaration further alleges that Claimant Thobias sold certain Nutragroup assets to an investor/investment group Boosted in December 2020 ("Boosted Sale"). Declaration ¶ 15.

54.     The Declaration further alleges that the Vehicle was purchased by Claimant Thobias using the proceeds of the sale of these Nutragroup assets to Boosted. Declaration ¶¶ 21, 23.

55.     The Declaration also confirms that Claimant Thobias sent to HSI/CBP the final purchase agreement ("Sale Documents") memorializing the Boosted Sale. Declaration ¶ 21.

56.     The Declaration quotes from the Sale Documents, indicating that the Government received and reviewed the documents. Declaration ¶ 22.

57.     However, the Declaration incorrectly lumps together all of Nutragroup's assets, when in fact only certain Nutragroup assets were included in the Boosted Sale.

58.     The Sale Documents do not reference Nutragroup's assets as a whole, and instead specifically establish which assets were included in the Boosted Sale, including certain Amazon accounts, products, and storefronts, as well as certain domain names, email addresses, and intellectual property.

59. The Declaration fails to allege that the Nutragroup assets that were included in the Boosted Sale were the same ones that were allegedly involved in the "blackhat service provider" activity.

60. Additionally, the Declaration woefully fails to demonstrate any nexus between the purchase of the Vehicle – allegedly by way of the Boosted Sale – and any criminal activity of Claimant Thobias.

61. The Declaration appears to rely on interview testimony from Adam Epstein,[2] a Boosted employee, alleging that Epstein, after hearing of the Government's allegations against Thobias, "stated that due to the fraudulent pretenses a decrease in sales has been noticed by BOOSTED"; however, in the same paragraph, the Declaration states that Epstein "did not recall ever learning of THOBIAS use of Blackhat hackers during the operation of his business," (see Declaration ¶ 17) so Epstein cannot be a basis of any alleged wrongdoing by Claimant Thobias, as he had no personal knowledge or awareness of Thobias' alleged actions.

62. Abstract allegations of Claimant Thobias engaging "blackhat service providers" to perform certain actions, without any reference to what products those assets related to, is not sufficient to plausibly allege or show any connection between these alleged actions and the purchase of the Vehicle.

63. Accordingly, the Complaint fails to state a claim or provide the required due process and should be dismissed.

### IV.   JURY TRIAL DEMANDED

64. In the event the Complaint is not dismissed, Claimants demand a jury trial.

---

[2] Note that around the time of the Government's interview with Epstein, Claimant Thobias was suing Boosted for various breaches by Boosted relating to the Boosted Sale. See Civil Action No. 2:22-cv-04660 in the United States District Court for the Central District of California, Western Division.

## V.     CONCLUSION

65.     In sum, the Government has no reason to seize the Vehicle, and this lack of adequate legal basis for seizure is apparent from the inadequacy of the Complaint. For the aforementioned reasons, it is hereby requested that:

   a.   the Complaint should be dismissed;

   b.   The Court order immediate restitution of the defendant property;

   c.   Claimants be awarded costs of this action; and

   d.   such other and further relief as the Court considers just and proper.

**WE HEREBY CERTIFY** that we electronically filed the instant motion using the CM/ECF System, which will send notification to all counsel of record.

Respectfully submitted on November 14, 2024.

*s/Berwin Cohen*
*Admitted Pro Hac Vice*
Berwin Cohen
Cohen Edderai, LLP
14 East 4th Street, Suite 501
New York, NY 10012
berwin@wolfferscohen.com
Office: (646) 696-0744
Fax: (646) 619-4358

*and,*



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
ndelnido@cstlawpr.com

*s/NATALIA E. DEL NIDO RODRÍGUEZ*
USDC PR NO. 301410

*Counsel for Claimants*

11