IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>v.<br><br>**2018 BUGATTI CHIRON (VIN#: VF9SP3V34JM795083)**,<br><br>Defendants *in rem*. | **Civil No. 23-1392 (MDM)** |

## URGENT MOTION FOR COURT INTERVENTION AND TO STAY *IN REM* PROCEEDINGS

Claimants Golden Exotics, LLC and Kevin Thobias ("Claimant Thobias," and together, "Claimants") move this Court to intervene to finalize the constructive seizure agreement and to stay the *in rem* proceedings filed by the United States, and in support state as follows:

### I.      FACTS

1. On May 31, 2023, U.S. Magistrate Judge Bruce J. McGiverin, of the United States District Court for the District of Puerto Rico, issued a Warrant to Seize Property Subject to Forfeiture ("Warrant"), based solely on a sealed affidavit provided by a government agent (the "Affidavit"). *See* ECF No. 24-1.

2. On or about June 2, 2023, government authorities with the Department of Homeland Security ("DHS"), under the authority granted by the Warrant, seized a 2018 Bugatti Chiron (VIN#: VF9SP3V34JM795083) (the "Vehicle") belonging to Golden Exotics, LLC, a company in which Claimant Kevin Thobias is the sole member.

3. The Vehicle was seized in Miami, Florida.

1

4. On August 2, 2023 the Government filed under seal an unsworn declaration ("Declaration") submitted in support of the complaint [ECF No. 3], which purports to establish probable cause to support the Warrant under which the Vehicle was taken.

5. Claimants filed a Motion to Dismiss this action on October 5, 2023 [ECF 24]. At the time, the Declaration remained sealed.

6. The Declaration was unsealed to Claimants on November 22, 2023.

7. At a hearing before the Court on September 5, 2024, the Court advised Claimants' counsel that the Court would permit Claimants to file an amended Motion to Dismiss, responding to the unsealed Declaration.

8. On November 14, 2024, Claimants filed an Amended Motion to Dismiss [ECF 58].

9. The Government filed its response in opposition to the Amended Motion to Dismiss on November 29, 2024 [ECF 59].

10. On January 13, 2025, Claimants filed a reply in support of their Amended Motion to Dismiss [ECF 64].

11. There has been no indictment for any related crimes alleged by the Government to date.

12. The parties have agreed to a framework for the constructive seizure of the Vehicle, so that Claimant Thobias may take possession of the Vehicle subject to certain restrictions.

13. The parties have yet to finalize the constructive seizure agreement despite Claimants' counsel's diligent efforts to do so.

14. The deadline for Rule 26 initial disclosures is on January 16, 2025.

15. At the hearing before the Court on September 5, 2024, as part of ongoing settlement communications the parties discussed the option of staying this case until the latter of a criminal

investigation ceases or the Government convicts Claimant Thobias of a crime that would justify the forfeiture of the Vehicle. The instant motion follows.

## II. LEGAL ARGUMENT

### A. THIS COURT SHOULD INTERVENE TO FINALIZE THE CONSTRUCTIVE SEIZURE AGREEMENT ENABLING CLAIMANT THOBIAS TO REGAIN POSSESSION, MAINTENANCE RESPONSIBILITY AND LIMITED USE OF THE VEHICLE.

16. "The government's legitimate interests at the inception of forfeiture proceedings to ensure that the property is not sold, destroyed, or used for further illegal activity prior to forfeiture judgment can be secured without seizing the property such as by filing a notice *of lis pendens* as authorized by state law, by obtaining an *ex parte* restraining order or other appropriate relief upon a showing in district court." United States v. One 1989, 23 Foot Wellcraft Motor Vessel, 910 F. Supp. 46, 52 (D.P.R. 1995); United States v. James Daniel Good Real Prop., 510 U.S. 43, 58 (1993).

17. "All that is necessary 'in order to institute and perfect proceedings in rem, [is] that the thing should be actually or constructively within the reach of the Court." Id. at 57 (citing The Brig Ann, 13 U.S. 289 (1815)).

18. "The Government's legitimate interest at the inception of forfeiture proceedings are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment. These legitimate interests can be secured without seizing the property." James Daniel Good Real Prop., 510 U.S. at 58.

19. Due process requires that the government employ the least restrictive means necessary to achieve its interests, where such means are available and effective. Id. at 62.

20. The Vehicle in the present action is unique, irreplaceable, and holds significant financial value, necessitating a higher standard of procedural protection.

21. The Vehicle is a 2018 Bugatti Chiron with a purchase value of $3.25 million and is only one of 500 units manufactured by the company. According to the Government's own estimation, the current value of the Vehicle is approximately $3.7 million USD, and is expected to continue increasing in value, barring any unforeseen market fluctuations.

22. A 2018 Bugatti Chiron requires extremely sophisticated maintenance and proper storage in order to preserve its value. The regular maintenance of the Bugatti costs approximately thirty thousand dollars ($30,000.00 USD) per year.

23. The Government is not in a position to provide such high-end maintenance and storage. Such maintenance requires qualified technicians who are trained and certified by the manufacturer. Each day the car is not properly attended to may significantly diminish its value.

24. If the Government's legal interests can be addressed by less restrictive means than the continued retention of the Vehicle, the Government should be required to implement those measures.

25. The parties have engaged in negotiations to reach a constructive seizure agreement, which would enable Claimant Thobias to regain possession of his Vehicle subject to certain terms and conditions, with the Vehicle remaining in constructive seizure.

26. The constructive seizure agreement would restrict the transfer or sale of the Vehicle, prohibit the Vehicle from being removed from the State of Florida, prohibit the Claimant from profiting from the Vehicle by using it in commercial endeavors, and permit the Government to inspect the Vehicle. The agreement also requires Claimant to properly service and maintain the condition of the Vehicle at the Claimant's expense. The Government has agreed to these terms in principle, and the restrictions and conditions outlined in the constructive seizure agreement serve to protect the interests of the Government.

27. Additionally, the Government's interest in preserving the value of the Vehicle would be better served by releasing it to the Claimant under the constructive seizure agreement, as the Government lacks the necessary expertise and resources to properly maintain the Vehicle, and its continued possession poses a significant risk of depreciation.

28. On November 26, 2024, Claimants' counsel provided the Government with a revised draft of the agreement, including all the changes and amendments requested by the Government.

29. By accepting all terms in the agreement in principle during the exchange, the Government demonstrated and acknowledged that there are lesser restrictive means than the continued retention of the Vehicle.

30. Claimants' counsel has since been in contact with the Government, sending numerous emails and speaking to AUSA Fernandez on several occasions including phone calls on December 16, 2024, December 26, 2024, December 27, 2024, and January 13, 2025.

31. Notwithstanding Claimants' counsel's diligent efforts to finalize the constructive seizure agreement, the Government has failed to take the necessary steps to bring it to a close.

32. There is no substantive reason why the Government has not finalized this agreement.

33. Thus, Claimants respectfully request that this Court intervene and schedule a conference to help finalize the constructive seizure agreement that has been agreed to in principle without signatures, so that Claimant Thobias can regain possession, maintenance responsibility and use of the Vehicle.

**B. THIS COURT SHOULD GRANT THE CLAIMANTS' MOTION TO STAY (1) PURSUANT TO 18 USC §981(G)(2); AND (2) IN THE INTERESTS OF JUDICIAL ECONOMY.**

1. **This Court should grant the stay pursuant to 18 USC §981(g)(2) because: (1) Claimant is the subject of a related criminal investigation; (2) Claimant has standing to assert a claim in this proceeding; and (3) continuation of the forfeiture proceeding will burden the Claimant's right against self-incrimination in the related investigation.**

    34.  Section 981(g)(2) of Title 18 provides:

    "(2) Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that—

    (A) the claimant is the subject of a related criminal investigation or case;
    (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and
    (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

    (3) With respect to the impact of civil discovery described in paragraphs (1) and (2), the court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case. In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so."

    *(a)    Claimant Thobias is the subject of a related criminal investigation or case.*

    35.  The Government has repeatedly stated and demonstrated to this Court at several hearings and in their filings that Claimant Thobias is the subject of an ongoing criminal investigation. *See, e.g.*, ECF No. 3, 41.

    36.  Further, the Government filed numerous motions to restrict so as to preserve the confidentiality of the ongoing investigation; such motions have been filed as recently as this month. *See, e.g.*, ECF No. 2, 33, 42, 47, 60.

    37.  The lack of an indictment over a year and a half after the seizure of the Vehicle also indicates that the related criminal investigation is still ongoing.

6

38. The subject civil forfeiture case and ongoing criminal investigation arise out of the same facts and circumstances and are clearly related.

*(b)  Claimants have standing to assert a claim in this civil forfeiture proceeding.*

39. Claimants have both statutory and constitutional standing to contest this forfeiture.

40. Statutory standing is satisfied by simply complying "with the procedures and deadlines for filing a claim set out in Supplemental Rule G." United States v. Ltr. from Alexander Hamilton to Marquis de Lafayette Dated July 21, 1780, 15 F.4th 515, 521 (1st Cir. 2021).

41. Pursuant to Supplemental Rule G(5), Claimants timely filed a claim asserting their interest in the Vehicle.

42. "[A]t the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices." United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 41 (1st Cir. 2003).

43. "[A]n allegation of ownership, coupled with some evidence of ownership, is sufficient to establish constitutional standing to contest a forfeiture." United States v. United States Currency $81000, 189 F.3d 28, 35 (1st Cir. 1999).

44. Claimant Golden Exotics, LLC, a Montana limited liability company, has timely filed a verified claim asserting ownership of the Vehicle. ECF No. 10.

45. Claimant Golden Exotics further demonstrated title of the Vehicle via its Certificate of Title. ECF No. 24-3.

46. Claimant Kevin Thobias timely filed a verified claim stating he is the sole owner of Golden Exotics, LLC. ECF No. 9.

7

47. Golden Exotics' Articles of Organization demonstrate Claimant Thobias's ownership. ECF No. 24-4.

48. Thus, Claimants have established the requisite standing to assert a claim in this forfeiture proceeding.

*(c)* ***Continuation of the forfeiture proceeding will burden the right of Claimant Thobias against self-incrimination in the related investigation.***

49. Claimants are placed in a difficult position with respect to discovery while there is a civil forfeiture action ongoing simultaneously with a criminal investigation.

50. Because of the criminal investigation, it may be in Claimant Thobias' interest to assert the Fifth Amendment privilege against self-incrimination in response to civil discovery requests.

51. However, a claimant who asserts the Fifth Amendment privilege against self-incrimination in a civil forfeiture action may have difficulty preserving a viable claim in or defense to that civil action, since the finder of fact will be allowed to draw an adverse inference from the claimant's invocation of his or her Fifth Amendment rights, regardless of whether there is an indictment.

52. The Government has already illustrated the necessity for the Claimant Thobias to preserve his rights against self-incrimination and prevent adverse inferences by submitting non-conclusive allegations in the Declaration it has filed with this Court.

53. Thus, continuation of the forfeiture proceeding will burden the right of Claimant Thobias to defend himself against self-incrimination in the related criminal investigation.

54. Further, at a prior hearing this Court has recognized the difficulty of properly progressing with discovery in these proceedings without adversely affecting the right that Claimant Thobias has to protect himself under the Fifth Amendment.

55. In United States v. One Assortment of Seventy-Three Firearms, 352 U.S. 330 (1957), the court granted a motion to stay proceedings pursuant to 18 U.S.C. 981(g)(2) because (a) the criminal investigation and civil forfeiture case were related; and (b) because of the potential adverse impact of civil discovery on the claimant's ability to defend in a related criminal matter.

56. Although a court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case, a protective order in this case cannot be imposed as an alternative to a stay, as the effect of such a protective order would be to allow the Claimants to pursue broad civil discovery while the Government would be substantially unable to do so.

57. Thus, statutory framework and precedent supports Claimants' request for a stay.

**2. This case should be stayed in the interest of judicial economy and fairness to Claimant Thobias.**

58. In Austin v. Unarco Industries, Inc., 705 F.2d 1, 5 (1st Cir. 1983), the court noted that a stay could be granted in the interest of judicial economy and fairness to the Claimants.

59. The court has inherent power to stay proceedings to control its docket efficiently and avoid wasting time and resources on issues that may be resolved in another forum or context. *See* Walcon Corp. v. D.J. MacKenzie Associates, Inc., 620 F. Supp. 89, 90 (D. Me. 1985).

60. The lack of an indictment after over a year of seizure makes the prosecution too speculative to justify the continuation of the forfeiture case.

61. Further, staying the *in rem* proceedings prevents piecemeal litigation and ensures that the case proceeds in an orderly fashion, which is a recognized ground for a stay to ensure judicial economy. *See* Duarte v. City of Boston, Civil Action 23-12159-NMG, 2024 WL 4804965, at *1 (D. Mass. Nov. 15, 2024).

62. This approach aligns with the principle that courts should avoid unnecessary duplication of judicial machinery and ensure that litigation is handled efficiently and fairly. *See* Walcon Corp., 620 F. Supp. at 89.

63. Claimant Thobias is part of an ongoing criminal investigation.

64. Allowing the Government to advance a civil proceeding will burden the Claimants and adversely affect the right that Claimant Thobias has to protect himself under the Fifth Amendment and may allow a finder of fact to draw an adverse inference from the Claimant's invocation of his Fifth Amendment rights.

65. The need to preserve such rights are not speculative and have been demonstrated by the Government's aggressive approach in demonstrating its right to forfeiture while using non-conclusive allegations in the Declaration.

66. If the Government decides to indict Claimant Thobias after this matter concludes, the courts would be burdened with duplicative litigation, while Claimants would be prejudiced by the hardship and burden of defending a criminal case after the outcome of these proceedings.

67. The Court can ensure that resources are not wasted on parallel proceedings that may ultimately be rendered moot by the outcome of the criminal investigation or case.

68. Further, if the Government does not commence criminal proceedings, and this action were to continue, Claimants would suffer a significant hardship stemming from the forfeiture of the Vehicle in a civil proceeding based on criminal actions which were never prosecuted in any parallel or previous action related to the Vehicle or Claimants.

69. The government would only need to prove by a preponderance of the evidence that the Vehicle is connected to criminal activity, which is a lower standard of proof than the "beyond a reasonable doubt" standard required in criminal cases.

70. This lower burden of proof leads to situations where property is forfeited based on non-prosecuted, non-conclusive allegations of criminal activity, potentially violating the due process rights of Claimant Thobias.

71. Additionally, modern "forfeiture serves, at least in part, to punish the owner" of property used for criminal purposes. Austin v. United States, 509 U.S. 602, 609, 618 (1993).

72. This punitive aspect, combined with the lack of criminal procedural protections in civil forfeiture proceedings violates the Fifth Amendment's guarantee of due process.

73. Justice Thomas, in his statement respecting the denial of certiorari in Leonard v. Texas, noted the practice of civil forfeiture without parallel criminal proceedings can lead "egregious and well-chronicled abuses" along with constitutional violations. *See* Leonard v. Texas, 137 S. Ct. 847, 847-48 (2017).

74. Allowing the Government to proceed pre-indictment with this *in rem* action would be: (a) unfair to Claimants; (b) unconstitutional pursuant to the Fourth, Fifth and Fourteenth Amendment; and (c) unprecedented in a case with no criminal proceedings or plea deal related to the *in rem* property or claimants.

75. Thus, this Court should stay this case and, if appropriate, allow the Government to advance this *in rem* proceeding after the later of the conclusion of the criminal investigation or disposition of the criminal case, which would ensure the litigation is handled efficiently and fairly.

### III.     CONCLUSION

Based on the foregoing reasons, Claimants move the Court to intervene and schedule a conference to finalize the constructive seizure agreement.

Claimants further move the Court for a stay of the forfeiture proceedings before this Court until the later of the end of the ongoing criminal investigations or the final disposition of any related criminal proceedings, or until such other time the Court deems proper.

**WE HEREBY CERTIFY** that we electronically filed the instant claim using the CM/ECF System, which will send notification to all counsel of record.

Respectfully submitted on January 16, 2025.

/s/ Jonathan Edderai

Jonathan Edderai
*Admitted Pro Hac Vice*
Wolffers Cohen & Edderai, LLP
1132 Kane Concourse, Suite 205
Bay Harbor Islands, FL 33154
jonathan@woffferscohen.com
Office: (786) 505-0431
Fax: (786) 544-2619

*and,*



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
ndelnido@cstlawpr.com

**/s/ NATALIA E. DEL NIDO RODRÍGUEZ**
USDC-PR No. 301410

*Counsel for Claimants*